UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
:
BOB CORDELL, on behalf of himself and all others :
similarly situated, :
:                                       12 Civ. 0637 (ALC) (RLE)
                             Plaintiff, :
:                                       **OPINION & ORDER**
      -against- :
:
THE MCGRAW-HILL COMPANIES, INC., :
                          Defendant. X
-------------------------------------- 

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10·23·12

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Bob Cordell ("Cordell") filed a complaint (the "Complaint") against defendant The McGraw-Hill Companies, Inc. ("McGraw-Hill) on behalf of himself and all others similarly situated, alleging breach of contract and the implied duty of good faith and fair dealing because of McGraw-Hill's alleged failure to remit to Cordell the appropriate amount of foreign royalties owed to him under contract. McGraw-Hill in turn filed a motion to dismiss (the "Motion") the Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons discussed below, the Motion is granted with prejudice.

### I. BACKGROUND[1]

McGraw-Hill is one of the largest publishers of books in the United States and throughout the world. McGraw-Hill enters into standardized "Publishing Agreements" with authors, such as Cordell and the putative class members, who have written or are engaged in writing manuscripts or books. The terms and conditions of the Publishing Agreements are

---

[1] The factual recitation and allegations set forth below derive from the Complaint, dated January 25, 2012, and the Memorandum in Opposition to Defendant's Motion to Dismiss, dated June 7, 2012 ("Pl.'s Mem.").

1

substantially identical in all material respects as to the method of calculation of royalties and other payments due an author for the sale of a particular work.

In February 2009, Cordell and McGraw-Hill entered into a Publishing Agreement (the "Agreement") calling for Cordell to author and deliver a manuscript tentatively entitled "Designing Audio Power Amplifiers," and for McGraw-Hill to publish and distribute the resulting book, in exchange for the payment of royalties.[2] In particular, the Agreement provides for the payment of a royalty for foreign sales of works, pursuant to the following provision:

> (2)   Foreign Sales  **10.00** percent of the Publisher's net receipts for each copy of the Work (hardcover or paperback) sold by the Publisher to the McGraw-Hill international book division or to third parties for use outside the United States.

Agreement, ¶ 7(b)(2).[3] This clause was drafted exclusively by McGraw-Hill, and it appears in all or substantially all agreements McGraw-Hill has entered into with the putative class members, with materially identical language differing only in the numerical percentage to be paid.

In the Complaint, Cordell alleges that McGraw-Hill systematically violates its contracts with its authors by failing to remit royalties based upon the amounts received from third parties for sales of works outside of the United States, when these third parties are the ultimate purchasers of works from McGraw-Hill. Cordell further alleges in the Complaint that McGraw-Hill, in bad faith, sells works to third-parties for use outside of the United States by purporting to first transfer those works to related "divisions" of McGraw-Hill in self-dealing transactions at below market prices, and that these "divisions" subsequently sell these works to independent third-parties at arm's-length at the full market price. Cordell complains that he and the putative

---

[2] The Agreement is attached to the Complaint as Exhibit A.
[3] "Net receipts" is defined "as the Publisher's selling price less discounts, credits, actual returns and a reasonable reserve for anticipated returns of 20% . . ." Agmt. ¶ 7d

2

class members receive only royalties on the lesser value of the artificial amount of the purported transaction with its "division." In the Complaint, Cordell characterizes the "sales" or "transfers" to the related divisions as book-keeping entries and not genuine sales.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations in a complaint are accepted as true. City of Pontiac Gen. Empls.' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 174 (2d Cir.2011). Nevertheless, the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir.2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[It] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (citation omitted). Courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir.2000).

### B. Breach of Contract

McGraw-Hill argues that Cordell's breach of contract claim must be dismissed because it paid royalties to Cordell based on the net receipts of sales to the McGraw-Hill international book division, in compliance with the Agreement. Cordell counters that McGraw-Hill violated the

Agreement by failing to remit royalties from sales to third-parties, even when third-parties are the ultimate purchasers of the works; and that the Agreement obligates McGraw-Hill to base its royalty payment upon actual sales as opposed to intra-company transfers, which McGraw-Hill has failed to do.

To state a claim in federal court for breach of contract under New York law, a plaintiff need only allege (1) the existence of an agreement; (2) adequate performance of the contract by plaintiff; (3) breach of the agreement by the defendant; and (4) damages. Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC, 300 F. App'x 48, 49 (2d Cir. 2008). The question the Court considers here is whether it can be determined as a matter of law that McGraw-Hill did not breach the Agreement.

"[J]udgment as a matter of law is appropriate if the contract language is unambiguous." (quoting Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 160 (2d Cir. 2003)). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." Id. (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 (2d Cir. 2004)). "[T]he presence or absence of ambiguity is determined by looking within the four corners of the document, without reference to extrinsic evidence." Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 236 (2d Cir. 2008) (citation omitted). A word or phrase is ambiguous when it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Parks Real Estate Purchasing Group, et al. v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006). Since "a contract may be ambiguous when applied to one set of facts but not another," "ambiguity is detected claim by claim." Morgan

4

Stanley Group Inc. et al., 225 F.3d at 278. In making this assessment, the Court "should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning." Federal Ins. Co. v. American Home Assur. Co., 639 F.3d 557, 568 (2d Cir.2011). Where a contract is ambiguous, a motion to dismiss a breach of contract claim for failure to state a claim will be denied. See Hard Rock Café Intern., (USA), Inc. v. Hard Rock Hotel Holdings, LLC, 808 F. Supp. 2d 552, 566 (S.D.N.Y. 2011). Where a document is unambiguous, the court will look no further than the four corners of the document to discern the parties' intent. Rainbow v. Swisher, 72 N.Y.2d 106, 108 (1988).

The relevant provision in the Agreement provides that McGraw-Hill is to remit to Cordell "10.00 percent of the Publisher's net receipts for each copy of the Work (hardcover or paperback) sold by the Publisher to the McGraw-Hill international book division or to third parties for use outside the United States." Agmt. ¶ 7(b)(2). Both parties appear to agree that that this or any other provision in the Agreement is unambiguous, although the parties propose differing interpretations. I agree with them that the Agreement is unambiguous. Accordingly, I will look within the four corners of the Agreement to discern the parties' intent.

Cordell argues that McGraw-Hill breached the express terms of the Agreement by failing to: (1) remit royalties from sales to third-parties, even when third-parties are the ultimate purchasers of the works; and (2) base its foreign royalty payment to Cordell upon actual sales as opposed to intra-company transfers. First, a straightforward reading of the foreign royalties provision demonstrates that that foreign royalty payments can be calculated in one of two ways: either based on sales to the "McGraw-Hill international book division or to third parties for use outside the United States." Agmt. ¶ 7(b)(2) (emphasis added); see U.S. Customs Serv., Region II

5

v. Federal Labor Relations Authority, 739 F.2d 829, 832 (2d Cir. 1984) (citation omitted) ("When 'or' is inserted between two clauses, the clauses are treated disjunctively rather than conjunctively."). Cordell's contention that McGraw-Hill is obligated to remit royalties from sales to third parties "whenever the distribution chain for a Work includes a sale to a third-party for use outside of the Untied States" misunderstands the disjunctive clause which gives McGraw-Hill the option of remitting royalties from sales to its international division. See RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S.Ct. 2065, 2072 (2012) (where clauses are connected by disjunctive "or," party has separate and distinct options and party need only satisfy one option, not all three). Once McGraw-Hill makes a "sale" to the "McGraw-Hill international book division," then any subsequent sales made between the international book division and third-parties are not covered by the express terms of the foreign royalty provision. Under Cordell's interpretation of the provision—and of the word "or"—Cordell would be entitled to two royalties: the first based on the initial sale to the international book division, and the second based on the subsequent sale to a third party. If the parties intended that Cordell receive a double royalty, then the word "or" would be replaced with "and." Since this is not the case, Cordell's first argument is unavailing.

Second, Cordell's contention that McGraw-Hill may not calculate its foreign royalty payments from sales to its international division because these sales are "self-dealing" transactions at below market prices is not supported by the terms of the Agreement. The foreign royalty provision refers to sales to "McGraw-Hill international division," an entity which clearly has a relationship to McGraw-Hill. Nothing suggests that a "sale" under the Agreement occurs only if it is made to an entity independent from McGraw-Hill. In addition, nothing suggests that a "sale" under the Agreement occurs only if it is made at a certain price. To the contrary, the

Agreement expressly provides that McGraw-Hill "shall publish the Work at its own expense at such time and in such style and manner . . . and sell the Work at such prices, as it shall deem suitable." Agmt. ¶ 6 (emphasis added). In conjunction with the provision explicitly giving McGraw-Hill the choice to sell to either of two types of buyers—one ostensibly internal and the other external—it would strain a plain reading of the Agreement to require that sales be made at market rate, or that sales to the different type of buyers be at the same rate.[4] Therefore, Cordell's second argument is unavailing as well. Accordingly, Cordell's breach of contract claim is dismissed.

## C. Breach of the Implied Duty of Good Faith and Fair Dealing

Under New York law, a breach of the implied duty of good faith and fair dealing "is merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992). "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). "Consequently, a breach of the implied covenant of good faith claim can survive a motion to dismiss 'only if it is based on allegations different than those underlying the accompanying breach of contract claim.'" ARI & Co., Inc. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (quoting Siradas v. Chase Lincoln First Bank, N.A., No. 98-cv-4028, 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999)). "Moreover, where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is

---

[4] Cordell acknowledges that McGraw-Hill has paid him royalties for 400 foreign sales at a price of $13.55 per copy, yielding Cordell $1.36 per copy. On domestic works, McGraw-Hill sold 1,046 copies for $29,705, yielding in a royalty of $2.84 per copy. Plaintiff's Memorandum of Law in Opposition to McGraw-Hill's Motion to Dismiss 12 n. 9.

intrinsically tied to the damages allegedly resulting from the breach of contract, there is no separate and distinct wrong that would give rise to an independent claim." Id. (internal quotation marks and citation omitted).

In this case, Cordell's breach of implied covenant of good faith claim is based on the same allegations as those underlying his breach of contract claim. In the Complaint, under the heading "FIRST CAUSE OF ACTION – Breach of Written Contract," Cordell alleges that McGraw-Hill breached the express terms of the Agreement "by failing to report sales or pay royalties to which they are entitled for the sale of Works to third-parties for use outside of the United States." Compl. ¶ 24. Just below, under the heading "SECOND CAUSE OF ACTION – Breach of Implied Duty of Good Faith and Fair Dealing," Cordell alleges that McGraw-Hill has breached this duty "[b]y engaging in the conduct outlined above." The "conduct outlined above" is, by definition, based on the same allegations as those underlying the breach of contract claim. Similarly, any damages resulting from the alleged breach of contract would be the same as those from the alleged breach of the implied duty of good faith. Thus, "there is no separate and distinct wrong that would give rise to an independent claim" for breach of the implied duty of good faith. See ARU & Co., 273 F. Supp. 2d at 522.

Cordell argues that he has stated a claim for breach of the implied duty of good faith because he has alleged in the Complaint that "McGraw-Hill engaged in self-dealing at artificially low prices in order to reduce Plaintiff's royalties and unfairly benefit itself." Pl.'s at 19; Compl. ¶ 10. Cordell contends that in order for McGraw-Hill to comply with the explicit and implicit obligations of the Agreement, McGraw-Hill needs to sell the works at fair-market value. Pl's at 20. However, "a court cannot imply a covenant [of good faith and fair dealing] inconsistent with terms expressly set forth in the contract." Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.,

723 F. Supp. 976, 991 (S.D.N.Y. 1989). Here, the Agreement expressly provides that McGraw-Hill "shall sell the Works at such prices . . . as it shall deem suitable." Agmt. ¶ 6. Therefore, Cordell's contention that McGraw-Hill had the implicit obligation to sell the works at fair market value—irrespective of what McGraw-Hill deemed suitable—would imply a term inconsistent with the express terms of the Agreement. Furthermore, Cordell's contention that McGraw-Hill has an implicit obligation to sell at market rate—the rate at which works are sold to third-parties—would effectively rewrite the express term which allows for royalties to be calculated based upon sales to its international book division. Accordingly, this claim is also dismissed. Because Cordell has not provided the Court with additional facts it could plausibly allege to cure the defects in the Complaint, the Complaint is dismissed with prejudice.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss the complaint is GRANTED with prejudice.

SO ORDERED.

Dated:   New York, New York
         October 23, 2012

_____
ANDREW L. CARTER, JR.
United States District Judge